1  RICHARD DOYLE, City Attorney (88625)
   NORA FRIMANN, Assistant City Attorney (93249)
2  LEAH S. GOLDBERG, Senior Deputy City Attorney (157278)
   Office of the City Attorney
3  200 East Santa Clara Street, 16th Floor
   San José, California  95113-1905
4  Telephone Number: (408) 535-1900
   Facsimile Number:  (408) 998-3131
5  E-Mail Address:  cao.main@sanjoseca.gov

6  Attorneys for Defendant CITY OF SAN JOSÉ

7  Daniel Cooper (Bar No. 153576)
   Drevet Hunt (Bar No. 240487)
8  LAWYERS FOR CLEAN WATER, INC.
   1004-A O'Reilly Avenue
9  San Francisco, California 94129
   Telephone: (415) 440-6520
10 Facsimile: (415) 440-4155
   Email: daniel@lawyersforcleanwater.com
11 Email: drev@lawyersforcleanwater.com

12
   George Torgun (Bar No. 222085)
13 Erica Maharg (Bar No. 279396)
   SAN FRANCISCO BAYKEEPER
14 1736 Franklin Street, Suite 800
   Oakland, California 94612
15 Telephone: (510) 735-9700
   Facsimile: (510) 735-9160
16 Email: george@baykeeper.org
17 Email: erica@baykeeper.org

18 Attorneys for Plaintiff
   SAN FRANCISCO BAYKEEPER
19

20                    UNITED STATES DISTRICT COURT

21                   NORTHERN DISTRICT OF CALIFORNIA

22

23 SAN FRANCISCO BAYKEEPER, a California          Civil Case No.: 15-CV-00642-BLF
   non-profit corporation,
24                                                **[PROPOSED]** CONSENT DECREE
                    Plaintiff,
25
           v.
26
   CITY OF SAN JOSÉ, a municipality, et al.,
27
                    Defendants.
28

1

## CONSENT DECREE

2   The following Consent Decree is entered into by and between Plaintiff San

3 Francisco Baykeeper ("Plaintiff" or "Baykeeper") and Defendant City of San José, a

4 municipal corporation ("Defendant," "City," or "San José").  The entities entering into this

5 Consent Decree are each an individual "Party" and collectively the "Parties."

6   **WHEREAS**, Baykeeper is a 501(c)(3) non-profit public benefit corporation

7 dedicated to, among other things, the protection and enhancement of the water quality of

8 the San Francisco Bay;

9   **WHEREAS**, the City of San José is a municipal corporation established by

10 California state law, with Departments of Transportation, Public Works, and

11 Environmental Services;

12   **WHEREAS**, the City of San José is an owner and operator of a Municipal

13 Separate Storm Sewer System that serves the City of San José ("San José MS4");

14   **WHEREAS**, the City of San José is an owner and operator of a separate sewage

15 collection system that serves the City of San José that is not a part of the San José MS4

16 ("San José Collection System");

17   **WHEREAS**, the San José MS4 is regulated by the Federal Water Pollution

18 Control Act, 33 U.S.C. § 1251 *et seq.* ("Clean Water Act" or "CWA"), and is permitted

19 under *Municipal Regional Stormwater NPDES Permit*, NPDES Permit No. CAS612008,

20 Order No. R2-2015-0049, California Regional Water Quality Control Board, San

21 Francisco Bay Region ("MS4 Permit," "MRP," or "Permit");

22   **WHEREAS**, the approach to demonstrating compliance with trash reduction

23 requirements is outlined in the MRP;

24   **WHEREAS**, on November 24, 2014, Baykeeper issued a sixty (60) day notice

25 letter ("Notice Letter") to Defendant.  The Notice Letter informed Defendant of

26 Baykeeper's intent to file suit against it for alleged Clean Water Act violations of the MS4

27 Permit, including alleged unlawful discharges of pollutants from the San José MS4 and

28 alleged sewage discharges to the San José MS4 from the San José Collection System;

1    **WHEREAS**, on February 11, 2015, Baykeeper filed its complaint against San

2  José in the United States District Court for the Northern District of California, Civil Case

3  No. 15-CV-00642-BLF (hereinafter, "Complaint");

4    **WHEREAS**, Defendant denies Baykeeper's allegations in the Complaint;

5    **WHEREAS**, the Parties, through their authorized representatives and without

6  either adjudication of the Complaint's claims or admission by San José of any alleged

7  violation or other wrongdoing, have chosen to resolve this action through settlement to

8  avoid the costs and uncertainties of further litigation;

9    **WHEREAS**, the Parties intend for this Consent Decree be consistent with

10  regulatory requirements; and

11    **WHEREAS**, all actions taken by San José pursuant to this Consent Decree will be

12  made in compliance with all applicable federal, state and local rules and regulations.

13    **NOW THEREFORE IT IS HEREBY STIPULATED BETWEEN THE PARTIES**

**AND ADJUDGED, ORDERED, AND DECREED BY THE COURT AS FOLLOWS:**

14    1.    The Court has jurisdiction over the subject matter of this Action pursuant to

15  Section 505(a)(1)(A) of the Clean Water Act, 33 U.S.C. § 1365(a)(1)(A).

16    2.    Venue is appropriate in the Northern District pursuant to Section 505(c)(1)

17  of the Clean Water Act, 33 U.S.C. § 1365(c)(1).

18    3.    The Complaint states claims upon which relief may be granted pursuant to

19  Section 505 of the Clean Water Act, 33 U.S.C. § 1365.

20    4.    Plaintiff has standing to bring this action.

21    5.    The Court will retain jurisdiction over this matter for purposes of enforcing

22  the terms of this Consent Decree for the life of the Consent Decree, or as long thereafter

23  as is necessary for the Court to resolve any motion to enforce this Consent Decree.

24    **I.    DEFINITIONS**

25    6.    Unless otherwise expressly defined herein, terms used in this Consent

26  Decree that are defined in the Clean Water Act or in regulations, or in rules promulgated

27  under the Clean Water Act, have the meaning assigned to them in the applicable

28

statutes, regulations, or rules.  Whenever terms listed below are used in this Consent Decree, the following definitions apply:

a.    "Annual Report" means a consolidated report containing reporting obligations in the MRP and this Consent Decree and will be submitted to Baykeeper on or before October 30th of any Year this Consent Decree is in effect.

b.    "CCTV" means closed-circuit television.

c.    "Consent Decree" means this Consent Decree, and any exhibits and appendices incorporated by reference to this Consent Decree.

d.    "Critical Bacteria Storm" means the 90th percentile 24-hour wet weather day when bacteria receiving water limits apply.  For San José, the Critical Bacteria Storm equates to a 24-hour storm event of 0.46 inches.

e.    "Day" means a calendar day.  In computing any period of time under this Consent Decree, where the last day of such period is a Saturday, Sunday, or Federal, State, or City Holiday, the period runs until the close of business on the next day that is not a Saturday, Sunday, or Federal, State, or City Holiday.

f.    "Dry Season" means the season from May 1 to September 30 of the same calendar Year.

g.    "FIB" means Fecal Indicator Bacteria.

h.    "Full Trash Capture System" means any single device or series of devices that traps all particles retained by a five millimeter mesh screen and has a design treatment capacity of not less than the peak flow rate resulting from a one-Year, one-hour storm in the sub-drainage area, which also includes a trash reservoir large enough to contain a reasonable amount of trash safely without overflowing trash into the overflow outlet between maintenance events.

i.    "Gravity Sewer" means pipes within San José's Collection System that convey wastewater by gravity flow.

j.    "Infeasible" means cannot be accomplished due to soil type, groundwater contamination, physical limitations, or engineering impossibility.  Infeasible

1   shall not mean lack of funding.

2      k. "Low Impact Development" means a Treatment Control that uses or

3   mimics natural processes that result in the infiltration, evapotranspiration, biotreatment or

4   use of stormwater in order to protect water quality and associated habitat.

5      l. "MS4" means "a conveyance or system of conveyances (including

6   roads with drainage systems, municipal streets, catch basins, curbs, gutters, ditches,

7   man-made channels, or storm drains)" owned or operated by a State, city, or town that is

8   "designed or used for collecting or conveying storm water" and "that discharges to waters

9   of the United States." *See* 40 C.F.R. § 122.26(b)(8); *see also id.* § 122.26(b)(18).

10      m. "Multi-Benefit Project" means a Treatment Control project designed

11   to achieve any of the benefits set forth in section 10562, subdivision (d) of the Water

12   Code.  Examples include projects designed to infiltrate, recharge, biotreat, or store

13   Stormwater; develop or enhance habitat and open space through Stormwater and non-

14   Stormwater management; and/or reduce Stormwater and non-Stormwater runoff volume.

15      n. "San José Collection System" is comprised of the City of San José's

16   sanitary sewer collection system, including the sewer pipes and lines, manholes or

17   maintenance holes, and all appurtenances thereto owned by San José that are used to

18   convey wastewater generated by residential, commercial, and industrial sources to the

19   Water Pollution Control Plant.

20      o. "Sanitary Sewer Overflow" or "SSO" means any overflow, spill,

21   release, discharge, or diversion of untreated or partially treated wastewater from the San

22   José Collection System.  SSOs include:  (1) overflows or releases of untreated or

23   partially treated wastewater that reach waters of the United States; (2) overflows or

24   releases of untreated or partially treated wastewater that do not reach waters of the

25   United States; and (3) wastewater backups into buildings and on private property that

26   are caused by blockages or flow conditions within the publicly owned portion of the San

27   José Collection System.

28      p. "Sewer Line Segment" means any section of publicly owned sewer

1  line or pipe located between:  (1) two manholes/maintenance holes; (2) a pump station
2  and a manhole/maintenance hole; (3) a pump station or a manhole/maintenance hole
3  and a headworks structure; or (4) a sewer line or pipe otherwise identifiable as a discrete
4  section.

5          q.      "Stormwater" has the meaning set forth in 40 C.F.R. §
6  122.26(b)(13).

7          r.      "Trash" consists of litter and particles of litter.  Litter means all
8  improperly discarded waste material, including, but not limited to, convenience food,
9  beverage, and other product packages or containers constructed of steel, aluminum,
10 glass, paper, plastic, and other natural and synthetic materials, thrown or deposited on
11 the lands and waters of the State, but not including the properly discarded waste of the
12 primary processing of agriculture, mining, logging, sawmilling, or manufacturing.

13         s.      "Trash Hot Spots" means locations of high trash density along
14 receiving water bodies, selected pursuant to Provision C.10.c of the MS4 Permit.

15         t.      "Treatment Controls" means best management practices to either:
16 (1) remove or biotreat pollutants and/or solids from Stormwater runoff, wastewater, or
17 effluent; or (2) capture, infiltrate, reuse, or biotreat Stormwater runoff, wastewater, or
18 effluent.  Treatment Controls include Full Trash Capture Systems, Low Impact
   Development Controls and Multi-Benefit Projects.

19         u.      "Very High, High, or Moderate Trash Generation Areas" are areas
20 that are considered to generate more than five (5) gallons of trash per acre per Year and
21 has the meaning set forth in the MS4 Permit.

22         v.      "Waters of the United States" has the meaning as set forth in 40
23 C.F.R. § 122.2 and as interpreted in applicable case law.

24         w.      "Wet Weather" means a time period within 48 hours after a storm
25 event in excess of 0.2 inches in depth.

26         x.      "Year" means calendar year, unless otherwise specified.

27

28

## II.     EFFECT OF CONSENT DECREE

7.      Notwithstanding the general objectives of this Consent Decree, Baykeeper does not, by its consent to this Consent Decree, warrant or aver in any manner that San José's compliance with this Consent Decree will constitute or result in compliance with any federal, state, or local law or regulation.  This Consent Decree is neither a permit nor a modification of existing permits under any federal, state, or local law and in no way relieves San José of its responsibilities to comply with all applicable federal, state, and local laws and regulations.

8.      The Parties enter into this Consent Decree for the purpose of avoiding costly litigation.  Nothing in this Consent Decree will be construed as an admission by San José, and San José does not intend to imply any admission as to any fact, finding, issue of law, or violation of law, nor will compliance with this Consent Decree be construed as an admission by San José of any fact, finding, conclusion, issue of law, or violation of law.

## III.     APPLICABILITY

9.      The provisions of this Consent Decree apply to and bind the Parties, including any successors or assigns.  The Parties certify that their undersigned representatives are fully authorized to enter into this Consent Decree, to execute it on behalf of the Parties, and to legally bind the Parties to its terms.

10.     The Parties agree to be bound by this Consent Decree and not to contest its validity in any subsequent proceeding to implement or enforce its terms.

11.     No change in ownership or corporate or other legal status of San José or any transfer of San José's assets or liabilities will in any way alter the responsibilities of San José, or any of its successors or assigns, under this Consent Decree.

12.     In any action to enforce this Consent Decree, San José will not raise as a defense the failure by any of its agents, servants, contractors, employees, and successors or assigns to take actions necessary to comply with this Consent Decree.

**IV.    AGENCY REVIEW, EFFECTIVE DATE AND TERMINATION DATE**

13.    The Effective Date of this Consent Decree will be the date that the Court enters the final Consent Decree.

14.    Plaintiff shall:  (a) submit this Consent Decree by certified mail to the United States Department of Justice and the Environmental Protection Agency (collectively, "Federal Agencies") within three (3) business days of the Parties' execution of this Consent Decree for agency review consistent with 40 C.F.R. § 135.5; and (b) lodge this (proposed) Consent Decree with the District Court. In the event the Federal Agencies comment negatively on the provisions of this Consent Decree, the Parties agree to meet and confer to resolve the issues raised by the Federal Agencies.  After the Federal Agencies have either completed their review of this Consent Decree without objection or the 45-day agency review period has expired, whichever is earlier, Plaintiff shall promptly request that the District Court enter this Consent Decree, and within five (5) days of entry of the Consent Decree, move to dismiss the Complaint and all claims therein with prejudice pursuant to Federal Rule of Civil Procedure 41(a)(2).

15.    This Consent Decree will terminate ten (10) Years from the Effective Date ("Termination Date").

## V.  TRASH REDUCTION PROGRAM

**A.    Trash Reduction Requirements**

16.    San José shall reduce trash discharges from 2009 levels to receiving waters in accordance with the following schedule:

a.  70% by July 1, 2017; and

b.  80% by July 1, 2019.

**B.    Compliance with the MS4 Permit**

17.    San José is required to comply with the requirements of Section C.10 of the MS4 Permit.

18.    If San José revises its Long-Term Trash Reduction Plan at any time during the term of this Consent Decree, San José will provide the revised Long-Term Trash

1  Reduction Plan to Baykeeper no later than thirty (30) days after submission of the
2  revision.

3  **C.      Receiving Water Monitoring Program**

4          19.     San José shall develop and implement a receiving water monitoring
5  program designed to answer the following questions:

6          a.      Have trash control actions effectively prevented trash within San
7  José's jurisdiction from discharging into receiving water(s)?

8          b.      Is trash present in receiving water(s), including transport from one
9  receiving water to another, e.g., from a creek to a San Francisco Bay segment, at levels
10 that may cause adverse water quality impacts?

11         c.      What proportions of trash found in these receiving waters are from
12 MS4 pathways and non-MS4 pathways?

13         d.      What is the characterization of trash types in these receiving
14 waters?

15         e.      Has the amount of trash discharged from the San José MS4
16 decreased from the previous year and over time?  If so, by how much? If not, why?

17         f.      Has the amount of trash at the Trash Hot Spots decreased from the
18 previous year?

19         20.     The receiving water monitoring program shall include direct measurements
20 or observations of trash in receiving water(s), or in scenarios where direct measurements
21 or observations are not feasible, surrogates for trash in receiving water(s), such as
22 measurement of trash on stream banks or shorelines.

23         21.     San José will develop the Receiving Water Monitoring Program which
24 includes criteria for designating which types of trash are associated with non-MS4
25 pathways, including criteria based on:  (a) trash size (i.e., too large for discharge through
26 an MS4 system), (b) location (i.e., proximity to homeless encampment or illegal dumping
27 site), and (c) type of material.  San José shall provide the Receiving Water Monitoring
28 Program to Baykeeper for comment within sixty (60) days of the Effective Date.

Baykeeper will submit comments, if any, on the Receiving Water Monitoring Program within thirty (30) days of receipt. San José will consider Baykeeper's comments in good faith within thirty (30) days of receipt, and will either incorporate those comments into the criteria or explain in writing why those comments were not accepted. Disputes as to the adequacy of the Receiving Water Monitoring Program shall be resolved through the Dispute Resolution provisions in Section XII below.

22.     Receiving water monitoring will be conducted once annually during the Dry Season at the six (6) Trash Hot Spots identified in Table 1. Receiving water monitoring shall begin during the 2017 Dry Season.

**Table 1. Receiving Water Monitoring Locations at Designated Trash Hot Spots**

| Trash Hot Spot |
| --- |
| 1)  SJC02 Coyote Creek at 101 (Watson Park) |
| 2)  SJC08 Coyote Creek at Roosevelt Park |
| 3)  SJC25a Coyote Creek at Singleton Rd. |
| 4)  SJC23 Confluence of Guadalupe River at W. Santa Clara St. |
| 5)  SJC27 Guadalupe River upstream of Woz Way to Interstate 280 |
| 6)  SJC31 Guadalupe River at Alma |

23.     San José shall collect and record the following data for each monitoring event:

a.     Tons and estimated volume of trash removed;

b.     Types of trash removed (trash characterization); and

c.     Estimated proportion of trash from MS4 and non-MS4 sources.

24.     San José shall sort and characterize trash removed from each of the seven (7) monitoring sites. Information will be collected using the most current Santa Clara Valley Urban Runoff Pollution Prevention Program ("SCVURPPP") "Trash Hot Spot Cleanup Data Collection Form."

25.     Based on this monitoring data, San José shall annually conduct an analysis to answer the questions set out in Paragraph 19 above. This analysis will be included in the Annual Report.

26.     San José shall retain documentation of the Receiving Water Monitoring Program, including the trash condition before and after the cleanup of the entire Trash

1  Hot Spot using photo documentation with a minimum of one (1) photo per hundred feet
2  of Trash Hot Spot length.  Photo documentation will be completed in accordance with the
3  most current SCVURPPP "Photograph Documentation Protocol for Creek and Shoreline
4  Trash Hot Spots" protocol.

5  **D.    Full Capture Systems**

6          27.    San José shall, in addition to the 1,328 acres currently in place, install and
7  maintain Full Trash Capture Systems sufficient to treat runoff from 3,000 acres of Very
8  High, High, or Moderate Trash Generation Areas.  The Full Trash Capture Systems shall
9  be fully installed and operational by October 1, 2017.

10         28.    San José will maintain the Full Trash Capture Systems in accordance with
11  Section C.10.b.i of the MS4 Permit.  If San José reduces the frequency of inspections,
12  San José shall report such reduction in that Year's Annual Report and provide
13  supporting documentation to Baykeeper.  Disputes shall be resolved through the Dispute
14  Resolution provisions in Section XII below.

15         29.    Maintenance shall include visual inspection and removal of all accumulated
16  trash when the device is plugged or is greater than fifty (50) percent full of accumulated
17  trash.  If a Full Trash Capture System requires removal of accumulated trash, San José
18  will inspect the device again within thirty (30) days after the accumulated trash was
19  removed.  If the device is plugged or is greater than fifty (50) percent full of accumulated
20  trash at that time, San José will remove the accumulated trash from Full Trash Capture
21  System again and develop a device-specific inspection and maintenance plan to ensure
22  the device is neither plugged nor more than half full of trash at the next maintenance
   event.

23  **E.    Trash Hot Spots**

24         30.    San José will clean Trash Hot Spots to a level of "no visual impact" at least
25  one time per Year.  This entails removal of all trash, debris, and historic derelict material
26  (e.g., tires, barrels and shopping carts) in excess of two (2) inches in diameter.  Trash
27  Hot Spots must be at least 100 yards of creek length or 200 yards of shoreline length.

28

1  San José agrees to maintain a total number of thirty-two (32) Trash Hot Spots.

2       31.     With the exception of the following modifications, San José will maintain

3  the existing Trash Hot Spots, as identified by the SCVURPPP in Trash Hot Spot

4  Selection: Final Report, submitted to the California Regional Water Quality Control

5  Board, San Francisco Bay Region ("Regional Water Board") on June 29, 2010, and:

6             a.     Discontinue SJC01, SJC17, and SJC20;

7             b.     Add Coyote Creek at Berryessa Road;

8             c.     Add Coyote Creek downstream of East Capital Expressway;

9             d.     Add Coyote Creek at Story and Senter Road.

10      32.     San José will modify the existing Trash Hot Spots to include the Trash Hot

11  Spots identified in Paragraph 31 within ninety (90) days of the Effective Date of this

12  Consent Decree.

13      33.     San José will annually assess Trash Hot Spot locations and may select

14  new Trash Hot Spot locations if, based on cleaning and reporting as required in this

15  Section, existing Trash Hot Spot locations are no longer Trash Hot Spots or if other

16  locations may better align with trash management areas.  San José will consult with

17  Baykeeper on sites proposed for addition to or removal from the Trash Hot Spot list.

    **F. Trash Program Reporting and Action Plan**

18      34.     San José shall provide the information required by the MS4 Permit,

19  sections C.10.b.i.b, C.10.c.iii, and C.10.f, to Baykeeper as part of its Annual Report

20  pursuant to this Consent Decree, except that each Annual Report shall include an

21  updated trash generation area map or maps, which include trash management areas,

22  including the locations and associated drainage areas of full trash capture systems and

23  other trash control actions, and the locations of Trash Hot Spots, with highlights or other

24  indication of any revisions or changes from the previous year map(s).

25      35.     In the event that San José is obligated to prepare a Trash Action Plan

26  under Section C.10.f.v of the MS4 Permit, San José will provide a copy of the Trash

27  Action Plan to Baykeeper prior to submission.  Baykeeper will review the Trash Action

28

1   Plan and must submit comments, if any, on the Trash Action Plan within fifteen (15) days

2   of receipt.  San José will consider Baykeeper's comments in good faith within thirty (30)

3   days from receipt of Baykeeper's comments.  San José will either incorporate those

4   comments into the Trash Action Plan or explain in writing why those comments were not

5   accepted.  Disputes as to the adequacy of a Trash Action Plan shall be resolved through

6   the Dispute Resolution provisions in Section XII below.

7        36.    For any trash control action that involves public education, including trash

8   reduction marketing campaigns, San José will employ its best efforts to positively credit

9   the partnership between Baykeeper and San José and offer Baykeeper the opportunity

10   to co-brand any media and marketing materials, if appropriate.

11                **VI.    FECAL INDICATOR BACTERIA ASSESSMENT PROGRAM**

12        37.    Within 120 days of the Effective Date, San José shall develop and submit

13   to Baykeeper a monitoring plan to characterize Wet Weather concentrations and source

14   types of fecal indicator bacteria ("FIB") from designated sites ("FIB Monitoring Plan").

15   Data produced pursuant to the FIB Monitoring Plan shall not be utilized to determine

16   compliance with FIB load reduction requirements.

17        38.    The purpose of the FIB Monitoring Plan is to address the following

18   questions:

19              a.    What are the wet weather in-stream FIB concentrations upstream of

20   the San José MS4?

21              b.    What are the wet weather in-stream FIB concentrations within

22   reaches influenced by the San José MS4?

23        39.    To address Paragraph 38.a above, the City will collect samples from

24   receiving waters during fifteen (15) wet weather events within the first five (5) Years after

25   the Effective Date from two (2) in-stream monitoring locations located immediately

26   upstream of the influence of the San José MS4:  one (1) location within Coyote Creek, at

27   Metcalf Park (37.23514N, -121.76194W); and one (1) location in Los Gatos Creek at

28

1   Hamilton Avenue (37.29444N, -121.93312W).  Samples will be analyzed for, at a

2   minimum, E.coli and Enterococci.

3       40.     To address Paragraph 38.b above, the City will collect samples from

4   receiving waters during fifteen (15) wet weather events within the first five (5) Years after

5   the Effective Date from six (6) in-stream monitoring locations located in reaches

6   influenced by the San José MS4: two (2) locations within Coyote Creek, two (2) locations

7   within the Guadalupe River, one (1) location within Los Gatos Creek, and one (1)

8   location within Penitencia Creek.  Sampling locations will be identified in the FIB

9   Monitoring Plan and will be located such that they represent well-mixed areas

10  downstream of MS4 outfalls draining urban areas.  Samples will be analyzed for, at a

11  minimum, E.coli and Enterococci.

12      41.     The FIB Monitoring Plan shall include a section on quality assurance

13  protocols to ensure validity and quality of the data collected, in general accordance with

14  EPA Guidance for Quality Assurance Project Plans (EPA QA/G-5), December 2002,

15  EPA/240/R-02/009.  This section shall also identify the laboratory or laboratories to

16  conduct the analyses and describe the methods for sample preparation and shipping.

17      42.     Baykeeper will review the FIB Monitoring Plan and submit comments, if

18  any, within thirty (30) days of receipt.  San José shall consider Baykeeper's comments in

19  good faith, and shall have thirty (30) days from receipt of Baykeeper's comments to

20  either incorporate those comments into the FIB Monitoring Plan or explain in writing why

21  those comments were not accepted.  Disputes as to the adequacy of the FIB Monitoring

22  Plan are to be resolved via Dispute Resolution as set out in Section XII below.

23      43.     All monitoring results generated for the prior Year shall be summarized,

24  with corresponding original lab results, and submitted to Baykeeper by October 30th of

25  each of the five (5) sampling years.

26

27

28

1        **VII.    FIB Load Reduction and Comprehensive Load Reduction Plan**

2    **A.    FIB Load Reduction Standard**

3            44.    The FIB load reduction standard shall be achieved through reductions in

4    flow from each sub-watershed of the San José MS4 to receiving waters, equivalent to full

5    retention of the Critical Bacteria Storm ("FIB Load Reduction Standard").  The Critical

6    Bacteria Storm shall be based upon a 22% exceedance rate.  Following the methods

7    utilized in the *Enhanced Watershed Management Program for Ballona Creek Watershed*

8    and *Appendix I of the Total Maximum Daily Loads for Indicator Bacteria, Project I -*

9    *Twenty Beaches and Creeks in the San Diego Region (Including Tecolote Creek):*

10   *Methodology for Calculating TMDLs for Impaired Beaches and Creeks and Allocating to*

11   *Sources*, a 22% exceedance rate correlates to a Critical Bacteria Storm of 0.46 inches,

12   based on historic precipitation data for San José (NOAA National Climactic Data Center

13   http://www.ncdc.noaa.gov/cdo-web/precipation data record for the San Jose, CA station

14   GHCND: USC0047821, January 1, 1950 to September 30, 2007), which is approximately

15   equivalent to the 82nd percentile 24-hour storm.

16   **B.    Reasonable Assurance Analysis and Comprehensive Load Reduction Plan**

17           45.    San José shall develop and implement a Comprehensive Load Reduction

18   Plan ("CLRP") to meet the FIB Load Reduction Standard, as defined in Paragraph 44 by

19   October 1, 2050.  The CLRP shall be developed in a manner consistent with the

20   *Guidelines for Conducting Reasonable Assurance Analysis in a Watershed*

21   *Management Program, Including an Enhanced Watershed Management Program*,

22   developed pursuant to the Los Angeles County MS4 Permit, Order No. R4-2012-0175

23   ("eWMP Guidance").

24           46.    The CLRP shall include a Reasonable Assurance Analysis ("RAA") and

25   shall be supported by a process-based Best Management Practice ("BMP")

26   Performance Model referenced in Table 1 of the eWMP Guidance, to demonstrate that

27   implementation of prescribed structural and non-structural BMPs shall, with a

28

1   reasonable level of assurance, achieve the FIB Load Reduction Standard by October 1,
2   2050.

3       47.     The CLRP shall include a Maintenance and Monitoring Plan ("MMP"), to
4   assure maintenance of BMPs and implementation of a monitoring program sufficient to
5   determine compliance with the FIB Load Reduction Standard.  The monitoring program
6   shall not be required to include end of pipe monitoring.

7       48.     The CLRP shall include detailed description of each regional Multi-Benefit
8   Project, consistent with Section D.I.a of the eWMP Guidance.  Description of other
9   Treatment Controls deemed necessary to achieve the FIB Load Reduction Standard
10  shall be described consistent with Sections D.I.a or D.I.b of the eWMP Guidance.  For
11  the purposes of modeling pollutant load and flow reductions, data on performance of
12  regional Multi-Benefit Projects and other Treatment Controls shall be drawn only from
13  peer-reviewed sources, including but not limited to sources such as the International
14  Stormwater BMP Database (available at http://www.bmpdatabase.org/).

15      49.     The CLRP will prioritize site selection of Multi-Benefit Projects and Low
16  Impact Development installations to achieve applicable water quality-based effluent
17  limitations, waste load allocations, and receiving water limitations associated with trash,
18  polychlorinated biphenyls ("PCBs"), mercury, and other pollutants, to the extent
19  appropriate.  For the purposes of RAA modeling, FIB shall serve as the "limiting
20  pollutant," pursuant to the eWMP Guidance.

21      50.     The CLRP shall include a schedule and estimated budget of
22  implementation designed to achieve compliance with the schedule for implementation,
23  established in Paragraph 53 of this Consent Decree.  The budget and schedule shall be
24  sufficiently robust to support a financial analysis to evaluate funding needs.

25      51.     Baykeeper shall review the draft CLRP and submit comments, if any, within
26  thirty (30) days of receipt, consistent with the schedule established in Paragraph 53 of
27  this Consent Decree.  San José shall consider Baykeeper's comments in good faith, and

28

1   shall have thirty (30) days from receipt of Baykeeper's comments to either incorporate

2   those comments into the CLRP or explain in writing why those comments were not

3   accepted.  Disputes as to the acceptance of Baykeeper's comments on the CLRP are to

4   be resolved via Dispute Resolution as set out in Section XII below.

5         52.     Upon completion of the final CLRP, San José must perform assessments

6   of their best management practices every two (2) Years.  Reported outcomes must be

7   expressly compared to the FIB Reduction Standard of this Consent Decree.

8   Performance assessment reporting must include:

9              a.     The status of completion of proposed structural treatment control

10  BMPs;

11             b.     The status of implementation of nonstructural BMPs;

12             c.     Information related to the validity of the RAA performed in support of

13  the CLRP and any underlying assumptions and risks; and

14             d.     The results of any monitoring undertaken to evaluate the impact of

15  implementation of the CLRP on receiving water quality.

16  **C.     Implementation Schedule**

17        53.     Subject to, and contingent upon, the City receiving sufficient new revenue

18  sources as set forth in Section D, Paragraphs 54-56 below, implementation of milestones

19  and compliance with the FIB Load Reduction Standard and implementation of the CLRP

20  shall be completed on the following schedule:

21             a.     San José shall contract with a qualified consultant to develop the

22  CLRP and RAA by June 30, 2017.

23             b.     The framework for the CLRP that meets the requirements of Section

24  C.3.j.i(1) of the MS4 Permit will be completed by June 30, 2017.

25             c.     A draft CLRP shall be submitted to Baykeeper by February 28,

26  2020.

27             d.     A final CLRP shall be submitted to Baykeeper by July 31, 2020.

28             e.     The Parties shall meet and confer to discuss the CLRP and identify

1   the highest priority projects identified in the final CLRP for implementation during the life
2   of this Consent Decree by November 20, 2020.  If unforeseen delays occur in meeting
3   the implementation schedule, including but not limited to permitting or a legal challenge,
4   despite all good faith efforts of San José, the Parties shall meet and confer regarding
5   the implementation schedule.

6       f.      San José shall appropriate a total of at least one hundred million
7   dollars ($100,000,000) over a 10-year period to implement the CLRP, including but not
8   limited to the acquisition of land, environmental review, design, construction, operation,
9   and maintenance of projects identified in the final CLRP.

10      g.      San José shall procure consultant services on or before September
11  1, 2021, for the purposes of implementing projects identified in the final CLRP totaling at
12  least one hundred million dollars ($100,000,000) over a 10-year period.

13      h.      On or before September 1, 2024, San José shall complete the
14  design, environmental, and geotechnical analysis of projects identified in the final CLRP
15  representing at least twenty-five million dollars ($25,000,000) in total project costs.

16      i.      On or before September 1, 2025, San José shall award contracts for
17  projects identified in the CLRP totaling at least twenty-five million dollars ($25,000,000).

18      j.      On or before September 1, 2025, San José shall complete the
19  design, environmental, and geotechnical analysis of projects identified in the final CLRP
20  representing at least thirty-five million dollars ($35,000,000), inclusive of sub-paragraph
21  h above, in total project costs.

22      k.      On or before the Termination Date, San José shall award contracts
23  for projects identified in the CLRP totaling at least thirty-five million dollars
24  ($35,000,000), inclusive of sub-paragraph i above, in total project costs.

25      l.      On or before the Termination Date, San José shall complete the
26  design, environmental, and geotechnical analysis of projects identified in the final CLRP
27  representing at least fifty million dollars ($50,000,000), inclusive of sub-paragraphs h
28  and j above, in total project costs.

m.     At least ninety (90) days prior to the Termination Date, San José shall provide to Baykeeper a final implementation letter.  The final implementation letter shall provide sufficient information and detail to demonstrate that San José has undertaken and will have completed sufficient activities to fully comply with the implementation schedule in this Paragraph by the Termination Date.  The final implementation letter shall be subject to review, comment, and the Dispute Resolution provisions in Section XII below.

**D.     Funding**

54. The Parties recognize that the City will need additional revenue sources to implement the projects included in the CLRP.  City staff will identify potential funding sources, including state and federal sources, and make all best efforts to submit timely and complete applications for the following grants, at a minimum and as available:

  a.  Prop 84 Grants

  b.  Proposition 1 Planning Grants

  c.  Proposition 1 Implementation Grants

55. The City shall bring additional possible revenue measures intended to seek funding to implement the CLRP, to the City Council for consideration by December 31, 2017.  Nothing in this paragraph obligates the City Council to take a particular legislative action.  Revenue measures may include:

  a.     Stormwater sewer fee

  b.     Stormwater sewer tax

  c.     Bond

56. If San José is unable to obtain funding by December 31, 2020 sufficient to implement the CLRP and meet the FIB Load Reduction Standard, the Parties shall meet and confer to discuss what measures San José will take to ensure funding is acquired.  If San José has not obtained funding sufficient to implement the CLRP by December 31, 2020, Baykeeper may, in its discretion, terminate this Consent Decree.  If Baykeeper

1  chooses not to terminate this Consent Decree, the Parties will work together to identify
2  other sources of funding available for San José to implement the CLRP and meet the
3  FIB Load Reduction Standard.

4      57. In any public communications related to fee or tax increase(s) related to this
5  Consent Decree, San José will not negatively cite Baykeeper or this Consent Decree as
6  the reason for such fee or tax increase(s), and will allow Baykeeper, to the extent
7  practicable, to review any media or marketing materials in advance of their release to the
8  public.

9  **VIII.    COLLECTION SYSTEM IMPROVEMENT PROGRAM**
10  **A.    Exfiltration Abatement Program**

11      58.    San José shall develop and implement an Exfiltration Abatement Program.
12  The goal of this program is to identify and prioritize for pipe rehabilitation, replacement or
13  repair the Gravity Sewer lines that have a high risk of leaking wastewater from the San
14  José Collection System to the San José MS4.

15      59.    As part of this Program, San José shall identify Sewer Line Segments
16  meeting all of the following criteria:  (1) Sewer Line Segments that are constructed of
17  vitrified clay or reinforced concrete; (2) Sewer Line Segments that cross above MS4
18  pipes or are above and within ten (10) feet horizontally of MS4 pipes; (3) Sewer Line
19  Segments fifty Years or older, with a condition assessment that identifies that the Sewer
20  Line Segment has a medium to severe crack, offset joint, or some other structural defect
21  of Grade 4 or higher according to PACP standards; and (4) Sewer Line Segments that
22  are above the water table ("High Risk Pipes").  All Sewer Line Segments in the San José
23  Collection System for which San José already possesses necessary information to
24  evaluate using criteria (1)-(4) of this Paragraph shall be evaluated and designated as
25  High Risk Pipes, as appropriate, by December 31, 2016.  All other Sewer Line Segments
26  in the San José Collection System meeting requirements (1), (2) and (4) of this
27  Paragraph shall be inspected using CCTV, ranked according to PACP standards, and
28

1 | designated High Risk Pipes, as appropriate, by December 31, 2019.

2 |     60.    San José shall repair, rehabilitate, or replace all discovered High Risk

3 | Pipes totaling on average at least six and a half (6.5) miles of High Risk Pipes each Year

4 | (equal to at least sixty-five (65) miles over the term of the Consent Decree).

5 |     61.    If San José completes repair, rehabilitation and replacement of all the High

6 | Risk Pipes and that total is less than sixty-five (65) miles, San José shall continue to

7 | repair, rehabilitate, or replace Sewer Line Segments totaling on average at least six and

8 | a half (6.5) miles per Year (at least sixty-five (65) miles over the term of the Consent

9 | Decree) based on the following criteria: (1) Sewer Line Segments that cross above MS4

10 | pipes or are above and within ten (10) feet horizontally of MS4 pipes; and (2) a condition

11 | assessment identifies that the Sewer Line Segment has a medium to severe crack, offset

12 | joint, or some other structural defect of Grade 4 or higher according to PACP standards.

13 |     62.    By December 31, 2016, and thereafter by October 30 of each Year this

14 | Consent Decree remains in effect, San José shall submit an Annual Exfiltration

15 | Abatement Program Plan to Baykeeper.  The Annual Exfiltration Abatement Program

16 | Plan shall be designed to eliminate the threat to water quality from High Risk Pipes and

17 | shall:

18 |     a.    Describe the Exfiltration Abatement Program activities for the

19 | preceding fiscal year;

20 |     b.    Identify all  San José MS4 pipes and Sewer Line Segments San

21 | José considered to determine which Sewer Line Segments are High Risk Pipes; which

22 | High Risk Pipes San José considered for repair, rehabilitation, and replacement; and

23 | which of those San José intends to repair, rehabilitate, or replace during that fiscal year;

24 |     c.    Include an ESRI GIS Shapefile for the pipes identified in sub-

25 | paragraph b above that contains the pipe ID number, upstream manhole identifier,

26 | downstream manhole identifier, upstream and downstream invert elevations, pipe age

27 | (for Sewer Line Segmentsonly), pipe material (for Sewer Line Segments only), pipe

28 | diameter, and whether the specific Sewer Line Segment was selected for repair,

1  rehabilitation, or replacement; and

2          d.      Describe how the factors listed in Paragraph 59 were used to

3  prioritize the Sewer Line Segments selected for repair, rehabilitation, or replacement.

4          63.     Baykeeper will review the Annual Exfiltration Abatement Program Plan and

5  submit comments, if any, on the Annual Exfiltration Abatement Program Plan within thirty

6  (30) days of receipt.  San José shall consider Baykeeper comments in good faith, and

7  shall have fifteen (15) days from receipt of Baykeeper's comments to either incorporate

8  those comments into the Annual Exfiltration Abatement Program Plan or explain in

9  writing why those comments were not accepted.  Disputes as to the adequacy of the

10 Annual Exfiltration Abatement Program Plan shall be resolved via the Dispute Resolution

11 provisions in Section XII below.

12 **B.      CAPACITY ASSURANCE**

13         64.     On or before December 21, 2017, San José shall review San José's 2013

14 Trunk System Master Plan, the capacity assessment associated with that Master Plan,

15 and any other appropriate documents, to generate a Capacity Assurance Program for

16 the trunk system.  The Capacity Assurance Program shall evaluate whether San José

17 has adequate capacity to prevent capacity related SSOs from the trunk system during

18 rain events up to and including a 10-Year 24-Hour Storm, recommend capacity

19 improvement, where appropriate, and prioritize and plan identified capacity projects

20 sufficient to ensure adequate capacity to prevent spills up to the 10-Year 24-Hour Storm.

21 **C.      ANNUAL COLLECTION SYSTEM REPORT**

22         65.     Beginning in 2017, San José shall submit an Annual Collection System

23 Report to Baykeeper, along with its Annual Report.  The Annual Collection System

24 Report shall provide details relevant to San José's implementation of, and compliance

25 with, this Section VIII during the preceding Year, including:

26         a.      Any program modifications or delays during the preceding Year;

27         b.      CCTV inspection schedules in the upcoming Year for inspection of

28

1 | Gravity Sewers.

2 |               c.       A statement of:

3 |                             i.       The miles of Sewer Line Segments that were assessed in the
4 | preceding Year;

5 |                             ii.      The miles of Sewer Line Segments assessed receiving each
6 | grade in the PACP grading system;

7 |                             iii.     A summary of the mileage and identification of Sewer Line
8 | Segments repaired, rehabilitated, and/or replaced during the preceding Year; and

9 |                             iv.      A map of the Sewer Line Segments cleaned.

10 |        66.    Baykeeper will submit comments, if any, on the Annual Collection System
11 | Report within thirty (30) days of receipt.  Unless provided otherwise, San José shall
12 | consider Baykeeper's comments in good faith and shall have twenty (20) days from
13 | receipt of Baykeeper's comments to either incorporate those comments into the Annual
14 | Collection System Report or explain in writing why those comments were not accepted.
15 | Disputes as to the adequacy of the Annual Collection System Report shall be resolved
16 | via Dispute Resolution as set out in Section XII of the Consent Decree.

17 |    IX.     ENVIRONMENTAL MITITGATION PROJECT, LITIGATION COSTS, AND
18 |                         COMPLIANCE MONITORING

19 |        67.    Environmental Mitigation Project: In lieu of civil penalties and to mitigate
20 | past environmental harms allegedly resulting from the allegations in the Complaint, San
21 | José agrees to fund and implement one or more environmental mitigation project(s) for
22 | the five (5) Years following enactment of this Consent Decree in the amount of two
23 | hundred thousand dollars ($200,000) per Year to be paid to San Jose Parks Foundation,
24 | to give grants for projects that mitigate the impacts of municipal stormwater pollution
25 | and/or trash on Coyote Creek and the Guadalupe River.  Within forty-five (45) days of
26 | the Effective Date and July 1 of each Year thereafter for the first five (5) Years of the
27 | term of the Consent Decree, San José will submit payment of two hundred thousand
28 | dollars ($200,000) to "San Jose Parks Foundation" addressed to: P.O. Box 53841, San

1 | Jose, California 95153.

2 |          a.      Projects must be based on the following criteria:

3 |                    i.      Projects that mitigate the impacts of trash and bacteria
4 | discharges in Coyote Creek or the Guadalupe River;

5 |                    ii.     Projects that otherwise improve water quality in Coyote Creek
6 | or the Guadalupe River; or

7 |                    iii.    Projects that include habitat restoration on Coyote Creek or
8 | the Guadalupe River.

9 |          b.      Where projects meeting any of the criteria set out in sub-paragraph
10 | 67a with a cumulative total of one million dollars ($1,000,000) are not identified by the
11 | San Jose Parks Foundation within six (6) years after the Effective Date, the San Jose
12 | Parks Foundation may provide funding for projects to mitigate the impacts of urban
13 | stormwater in the Guadalupe River or Coyote Creek watersheds.

14 |          c.      Within thirty (30) days of execution of this Consent Decree, the San
15 | Jose Parks Foundation will provide a letter to the United States Department of Justice
16 | and the Parties confirming its commitment to grant the environmental mitigation funds
17 | consistent with the requirements of the Consent Decree.  The San Jose Parks
18 | Foundation will also provide a letter to U.S. Department of Justice and the Parties
19 | summarizing each Year's grants, again confirming consistency with Consent Decree
20 | requirements, on or before January 30th each Year during the term of the Consent
21 | Decree.

22 |          d.      Past or present City representatives or employees must recuse
23 | themselves from any part of the grant allocation process for the projects described in
24 | this Paragraph.  The environmental mitigation funds granted pursuant to this Paragraph
25 | shall not replace funding from the City for any current or planned projects.

26 |          68.    Baykeeper's Litigation Fees and Costs.  San José agrees to pay
27 | Baykeeper the sum of four hundred twenty-five thousand dollars ($425,000), which

28 |

1  covers attorneys' fees and costs for services performed by and on behalf of Baykeeper
2  by its attorneys and consultants.  San José will submit payment within forty-five (45)
3  days of the Effective Date to "San Francisco Baykeeper" addressed to: 1736 Franklin
4  Street, Suite 800, Oakland, California 94612.

5      69.    Compliance Monitoring.  To defray Baykeeper's time and costs monitoring
6  San José's compliance with this Consent Decree over the next ten (10) Years, San José
7  agrees to pay Baykeeper the sum of ten thousand dollars ($10,000) per Year for the
8  term of this Consent Decree.  Payment shall be made by June 30 of each Year
9  commencing June 30, 2017, and shall be made payable to "San Francisco Baykeeper"
10 addressed to: 1736 Franklin Street, Suite 800, Oakland, California 94612.  In the final
11 Year of this Consent Decree, San José shall remit the final compliance monitoring
12 payment of ten thousand dollars ($10,000) to Baykeeper by the Termination Date.  If this
13 Consent Decree terminates early pursuant to Paragraph 56, San José shall remit the
14 final compliance monitoring payment prorated for the time the Consent Decree was in
15 effect during the fiscal year to Baykeeper within forty-five (45) days of the Termination
16 Date.

17                          **X.    STIPULATED PENALTIES**

18     70.    San José agrees to pay the following stipulated payments in the event that
19 it misses a deadline required by this Consent Decree, other than a missed deadline
20 because of a Force Majeure event as defined in Paragraph 101:

21           a.    For any report more than ten (10) days late, San José shall pay fifty
22 dollars ($50) per day, up to thirty (30) days late for a total of one thousand dollars
23 ($1,000.00).

24           b.    For any report more than thirty (30) days late, San José shall pay an
25 additional one thousand dollars ($1,000).

26           c.    For any report more than ninety (90) days late, San José shall pay
27 an additional three thousand dollars ($3,000).

28

1        d.     The above penalties are cumulative, as applicable, to a maximum

2  penalty of seven thousand dollars ($7,000) per report.

3      71.    Any disagreement as to the amount of a stipulated payment is subject to

4  the Dispute Resolution provisions in Section XII below.  San José agrees to pay any

5  stipulated payments due pursuant to this Consent Decree within forty-five (45) days after

6  the City receives written notice of the stipulated payment liability, or within forty-five (45)

7  days after resolution of a dispute in favor of Baykeeper if Dispute Resolution has been

8  invoked.

9      72.    All payments of stipulated penalties described above must be paid by San

10  José to Baykeeper at the address in Paragraph 91.

11     73.    The payment of stipulated penalties under this Consent Decree will not be

12  deemed an admission of or a violation of any law, regulation, or any of San José's

13  NPDES Permits.

14               **XI.   REGULATORY AGENCY ACTION**

15     74.    In entering into this Consent Decree, the Parties intend that San José

16  comply with the MS4 Permit requirements.  The Parties further recognize that the

17  Regional Water Board has the primary obligation to issue and oversee compliance with

18  the MS4 Permit.  The Parties intend that the Consent Decree be consistent with

19  regulatory requirements.  In the event that the State Water Resources Control Board

20  ("State Water Board"), Regional Water Board, or staff thereof issues written

21  requirements, guidance, or directives that are inconsistent with the requirements of the

22  Consent Decree, the Parties shall meet and confer pursuant to the Dispute Resolution

23  provisions in Section XII below.  In the event the Regional Water Board or the State

24  Water Board modifies the MS4 Permit, or modifies applicable Water Quality Objectives

25  or Total Maximum Daily Loads ("TMDLs") and incorporates those into the Basin Plan, the

26  Parties shall meet and confer pursuant to the Dispute Resolution provisions and

27  negotiate in good faith to modify the terms of this Consent Decree to be consistent with

28

1  the modified requirements.  Nothing in this Consent Decree prohibits either Party from
2  challenging the Regional Water Board's or State Water Board's actions or inactions.

3  **XII.    DISPUTE RESOLUTION**

4      75.    This Court will retain jurisdiction over this matter for the term of this
5  Consent Decree for the purposes of enforcing the terms and conditions of this Consent
6  Decree, and adjudicating any disputes between the Parties that may arise under the
7  provisions of this Consent Decree.  The Court has and will maintain the power to enforce
8  this Consent Decree with all available legal and equitable remedies.

9      76.    In resolving disputes concerning implementation or interpretation of any
10 provision of this Consent Decree, the Parties agree that any action or proceeding to
11 enforce or interpret the terms of this Consent Decree or how regulatory mandates impact
12 this Consent Decree, cannot be heard by the Court unless the Parties have first utilized
13 Informal Dispute Resolution in Paragraph 78, and the mediation process in Paragraph
14 79.

15     77.    Either Party to this Consent Decree may invoke the dispute resolution
16 procedures of this Section by notifying the other Party in writing and clearly stating the
17 matter(s) in dispute and of the Party's proposal to resolve the dispute under this Section.

18     78.    The Parties will meet and confer (either by telephone or in person) in a
19 good faith attempt to resolve the dispute informally ("Informal Dispute Resolution") within
20 thirty (30) days from the date of the notice.  By mutual consent, the Parties may extend
21 the time to meet and confer.

22     79.    If Informal Dispute Resolution is not successful in resolving the dispute,
23 either Party may request mediation in the Federal District Court with Magistrate Judge
24 Cousins serving as the mediator, or if unavailable, another Federal Magistrate assigned
25 to this matter.

26     80.    The Party initiating the mediation must serve a written notice of its
27 intention to seek mediation ("Mediation Notice").  The Mediation Notice may be no longer
28

than 15 pages in length and must set forth with particularity all of the Party's claims and the factual foundation for such claims.  Within fourteen (14) days of receipt of the Mediation Notice, the other Party must serve a written response of no more than fifteen (15) pages setting forth with particularity its position with regard to the claims contained in the Mediation Notice ("Response").  The Mediation Notice and the Response will be provided concurrently to Magistrate Judge Cousins or another Magistrate as appropriate.  The Parties and the Magistrate may hold a pre-mediation conference for the purpose of setting the schedule and procedures for the mediation.  Each Party shall pay its own fees and costs for the mediation.

81.    If the Parties cannot resolve a dispute through Informal Dispute Resolution or the mediation process, then either Party may invoke formal dispute resolution ("Formal Dispute Resolution").  To invoke Formal Dispute Resolution, a Party must file a motion before the District Court to interpret this Consent Decree; reconcile provisions of this Consent Decree with regulatory changes, guidance or directives; or determine whether either Party is in breach of this Consent Decree and if so, to require the breaching Party to correct the breach identified by the Court within a reasonable period of time.  The filing Party may request an expedited hearing schedule on the motion.

82.    When resolving disputes, in addition to contract interpretation principles and Clean Water Act precedent, the Parties and the District Court Judge shall consider:

a.    Changes in any re-issued Permit;

b.    Written guidance or permit interpretation from Regional Water Board staff;

c.    The Bay Area Stormwater Management Agencies Association or SCVURPPP regional program, such as the Trash Receiving Water Monitoring Plan, once completed and approved by the Regional Water Board; and

d.    Changes to Water Quality Objectives in the San Francisco Bay Basin Water Quality Control Plan, including the establishment of a TMDL.

1    83.    To help limit fees and costs potentially incurred in dispute resolution, the
2  Parties agree to waive the right to appeal any decision of the District Court.

3    84.    Except as otherwise provided in this Consent Decree, litigation costs and
4  fees incurred in addressing and/or resolving any dispute shall be awarded in accordance
5  with the standard established by section 505 of the Clean Water Act, 33 U.S.C. § 1365,
6  and case law interpreting that standard, provided that San José will not be obligated to
7  pay more than two hundred thousand dollars ($200,000) during the term of this Consent
8  Decree.

9    85.    Notwithstanding that a particular issue is in the Dispute Resolution process
10  outlined in this Section XII, San José must comply with any provisions of the Consent
11  Decree that are not in dispute.  The timeline for implementation of any issues that are in
12  the Dispute Resolution process will be tolled pending the outcome of the Dispute
13  Resolution.

14                 **XIII.    MUTUAL RELEASE OF LIABILITY**

15    86.    Baykeeper's Release.  Upon the Effective Date of this Consent Decree and
16  through the Termination Date, Baykeeper, on its own behalf and on behalf of its current
17  and former officers, directors, employees, and each of their successors and assigns, and
18  its agents, attorneys, and other representatives, hereby releases and covenants not to
19  sue San José (and each of its current, former, and future City Council members, officers,
20  directors and employees, and each of their predecessors, successors and assigns, and
21  each of their agents, attorneys, consultants, and other representatives) of and from, and
22  waives CWA claims, known and unknown, that Baykeeper alleged, or could have alleged
23  in its Notice Letter or Complaint and for alleged violations of the MS4 Permit occurring
24  during the term of this Consent Decree, including all claims for injunctive relief, penalties,
25  fees (including fees of attorneys, experts, and others), costs, expenses or any other sum
26  incurred or claimed.  Baykeeper's release does not apply to claims for San José's failure
27  to comply with this Consent Decree.

28

1     87.    San José's Release.  Upon the Effective Date of this Consent Decree, San

2 José, on its own behalf and on behalf of its current and former City Council members

3 and employees, and each of their successors and assigns, and their agents, attorneys,

4 and other representatives, hereby releases Baykeeper (and its current and former

5 officers, directors, and employees, and each of their successors and assigns, and its

6 agents, attorneys, and other representatives) of and from, and waives all claims which

7 arise from or pertain to this action, including all claims for fees (including fees of

8 attorneys, experts, and others), costs, expenses or any other sum incurred or claimed for

9 matters related to, or which could have been asserted in response to, Baykeeper's

10 Complaint up to the Termination Date.   San Jose's release does not apply to claims for

11 Baykeeper's failure to comply with this Consent Decree.

12     88.    California Civil Code Waiver.  The Parties acknowledge that they are

13 familiar with section 1542 of the California Civil Code, which provides:

14        A general release does not extend to claims which the creditor does not
know or suspect to exist in his favor at the time of the executing the

15        release, which if known by him must have materially affected his
settlement with the debtor.

16 The Parties hereby waive and relinquish any rights or benefits they may have under

17 California Civil Code section 1542 with respect to any other claims against each other

18 arising from, or related to, the allegations and claims as set forth in the Notice Letter, the

19 Complaint, or the MS4 Permit during the term of this Consent Decree.

20     89.    Nothing in this Consent Decree limits or otherwise affects the Parties' right

21 to address or take any position that they deem necessary or appropriate in any formal or

22 informal proceeding before the Regional Water Board, the State Water Board, the U.S.

23 Environmental Protection Agency, or any other judicial or administrative body on any

24 matter relating to the MS4 Permit or any reissued or subsequent version of the MS4

25 Permit, or any issue relevant to this action.  Unless otherwise expressly waived in this

26 Consent Decree, the City further reserves all defenses, whether legal or equitable, with

27 respect to any future enforcement action that may be brought against it, whether by

28

1   Plaintiff, the United States, the State of California or any other person or entity.  San
2   José further expressly reserves all rights and remedies otherwise available to it with
3   respect to the MS4 Permit.

4         90.    During the term of this Consent Decree, Baykeeper, and its employees
5   acting on behalf of Baykeeper, will not provide data, financial support or personnel time
6   for the purpose of supporting lawsuits brought by other groups or individuals against the
7   City for the violations alleged in the Notice Letter or Complaint or for any alleged
8   violations of the MS4 Permit.

9             **XIV.    NOTICES AND SUBMISSIONS**

10         91.    Any notifications, submissions, or communications to Baykeeper or to San
11   José pursuant to this Consent Decree will be, to the extent feasible, sent via electronic
12   mail transmission to the e-mail addresses listed below (electronic return receipt
13   requested) or, if electronic transmission is not feasible, via U.S. Mail or hand delivery to
14   the following addresses.  Any change in the individuals or addresses designated by any
15   Party must be made in writing to all Parties, but the Parties stipulate and agree that the
16   Parties need not amend this Consent Decree to effectuate a change in the notice
17   recipients.

18       <u>If to Baykeeper:</u>

19
20       Daniel Cooper
    Lawyers for Clean Water, Inc.
    1004-A O'Reilly Avenue
21       San Francisco, California 94129
    Email: daniel@lawyersforcleanwater.com
22
23       With copies to:

24       Nicole Sasaki
    San Francisco Baykeeper
25       1736 Franklin Street, Suite 800
    Oakland, California 94612
26       Email: nicole@baykeeper.org
27
28

1

<u>If to San José</u>:

2

City of San José
Attn: City Attorney

3

200 E. Santa Clara St., 16th Floor
San José, CA 95113

4

Telephone: (408) 535-1900
Facsimile: (408) 998-3131

5

Email: nora.frimann@sanjoseca.gov

6

With copies to:

7

City of San José

8

Attn: Directors of Environmental Services,
Public Works and Transportation

9

200 East Santa Clara Street

10

San José, CA 95113
Telephone: (408) 535-1900

11

Facsimile: (408) 998-3131
Email: cao.main@sanjoseca.gov

12

13        92.     Notices submitted electronically in accordance with this Section will be

14    deemed submitted upon transmission, but a notice is not effective if the sending Party

15    learns that it did not reach the Party to be notified.  Notwithstanding the sender's receipt

16    of a successful delivery notification, a recipient that fails to receive the submission may

17    request delivery by other means.  Such a request does not affect the timeliness of the

18    original submission.  Notices sent by U.S. Mail will be deemed submitted on the date

19    they are postmarked.

20        93.     San José agrees to provide to Baykeeper any new or existing final

21    technical reports or documents within San José's custody or control that are reasonably

22    necessary to confirm San José's compliance with this Consent Decree within thirty (30)

23    days of written request by Baykeeper.

24        94.     During the term of this Consent Decree, San José agrees to provide

25    Baykeeper with a copy of all final documents required to be submitted to the Regional

26    Water Board or the State Water Board concerning the City's compliance with the current

27    or any subsequent MS4 Permit.  Such documents will be transmitted to Baykeeper via

28

1    electronic mail at the time, or within twenty-four (24) hours, that the documents are
2    submitted to the Regional Water Board or State Water Board, with the exception of the
3    Annual Report. The Parties agree that San José is under no obligation to provide
4    Baykeeper any documents, data or reports that are not in final form.

5         95.    During the term of this Consent Decree, San José will use its best efforts to
6    provide Baykeeper with a copy of all public communications and education materials
7    related to the matters covered under this Consent Decree, including but not limited to
8    trash reduction marketing campaigns.

9         96.    Failure to provide copies to Baykeeper of reports to the Regional Water
10   Board or the State Water Board or public communications as required in Paragraphs 94-
11   95 will not subject the City to stipulated penalties under Section X of this Consent
12   Decree.

13        97.    During the life of this Consent Decree, San José will preserve at least one
14   legible copy of all records and documents, including computer-stored information, which
15   memorializes performance of its obligations under this Consent Decree.

16                        **XV.    GENERAL PROVISIONS**

17        98.    Construction. The language in all parts of this Consent Decree will be
18   construed according to its plain and ordinary meaning, except as to those terms
19   specifically defined within the Consent Decree or the MS4 Permit. If a term is defined
20   differently in this Consent Decree and the MS4 Permit, the definition in the Consent
21   Decree shall control.

22        99.    Choice of Law. The laws of the United States will govern this Consent
23   Decree, and to the extent State law applies, the laws of the State of California will
24   govern.

25        100.   Counterparts. This Consent Decree may be executed in any number of
26   counterparts, all of which together will constitute one original document. Telecopy,
27   scanned copies (i.e., pdf) and/or facsimile copies of original signature will be deemed to
28

1   be originally executed counterparts of this Consent Decree.

2       101.   Force Majeure.  Neither Party will be considered to be in default in the

3   performance of any obligations under this Consent Decree precluded by an event of

4   Force Majeure.  Force Majeure is any act of God, war, fire, earthquake, natural

5   catastrophe, sabotage or terrorism, city-wide civil unrest, or restraint by court order.

6   Force Majeure does not include normal inclement weather, economic hardship, or failure

7   to allocate funds to comply with this Consent Decree during San José's annual budget

8   process, except where these conditions are due to a Force Majeure event.  Any Party

9   seeking to rely upon this Section to excuse or postpone performance shall have the

10  burden of establishing that it could not reasonably have avoided the Force Majeure event

11  and that through the exercise of due diligence it has been unable to overcome the failure

12  of performance.  The Parties shall exercise due diligence to resolve and remove any

13  Force Majeure event.  For any delay in performance caused by a Force Majeure event,

14  the Parties agree to modify this Consent Decree to provide additional time for

15  performance of the particular requirement and, as applicable, any subsequent

16  requirement affected by the Force Majeure.  Delay in compliance with a particular

17  requirement due to a Force Majeure event shall not excuse or delay compliance with any

18  and all other unrelated and unaffected obligations required under this Consent Decree.

19  If the Parties are unable to agree that a delay has been caused by a Force Majeure

20  event, or if the Parties are unable to agree on a modification to the schedule for the

21  particular requirement(s) delayed due to Force Majeure, the Parties will invoke Dispute

22  Resolution provisions in Section XII.

23      102.   Modification of the Consent Decree.  This Consent Decree, and any

24  provisions herein, may not be changed, waived, discharged, or terminated unless by a

25  written instrument, signed by the Parties.  The Parties agree to modify the Consent

26  Decree to incorporate any changes to the Consent Decree as a result of the Dispute

27  Resolution process, if any.

28

1      103.  Full Settlement.  This Consent Decree constitutes a full and final

2  satisfaction of this matter, including without limitation, anything in Plaintiff's Notice Letter

3  or Complaint.

4      104.  Severability.  Except as otherwise expressly provided in this Consent

5  Decree, in the event that any provision, paragraph, Section, subsection, or sentence of

6  this Consent Decree is held by the Court to be unenforceable, the validity of the

7  enforceable provisions will remain in full force and effect providing that the intent of the

8  Parties when entering into this Consent Decree can still be achieved.

9      105.  Integration Clause.  This is an integrated Consent Decree.  This Consent

10  Decree is intended to be a full and complete statement of the terms of the agreement

11  between the Parties and expressly supersedes any and all prior oral or written

12  agreements, covenants, representations, and warranties (express or implied) concerning

13  the subject matter of this Consent Decree.

14      106.  No Third Party Beneficiaries.  This Consent Decree does not confer upon

15  any person other than the Parties any rights or remedies hereunder.

16      107.  Authority.  The undersigned representatives for Baykeeper and San José

17  each certify that he/she is fully authorized by the Party whom he/she represents to enter

18  into the terms and conditions of this Consent Decree, to execute it on behalf of the

19  Parties, and to legally bind the Parties to its terms.

20      The Parties hereby enter into this Consent Decree.

21  CITY OF SAN JOSÉ

22

23  Date: _6/16/16_

24                               By: Richard Doyle
City Attorney

25

26

27

28

APPROVED AS TO FORM:

Date: _6·15·16_

By: Nora Frimann
Assistant City Attorney

SAN FRANCISCO BAYKEEPER:

Date: _June 1, 2016_

By: Sejal Choksi-Chugh
Executive Director

APPROVED AS TO FORM:

Date: 27 May 2016

By: Daniel Cooper
Lawyers for Clean Water, Inc.
Counsel for Baykeeper

**IT IS SO ORDERED**

Date: August 11, 2016

Honorable Beth Labson Freeman
District Judge of the
United States District Court for the
Northern District of California